UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIE YANG,<br><br>        Plaintiff,<br><br>v.<br><br>FRANCESCA'S COLLECTIONS, INC.,<br><br>        Defendant. | Case No.17-cv-04950-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 33 |

Pending before the Court is Defendant Francesca's Collections, Inc.'s motion to dismiss Plaintiff Mie Yang's First Amended Complaint. For the reasons set forth below, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

I. **BACKGROUND**

    A. **Factual Allegations**

For purposes of this motion, the Court takes the following allegations to be true. In September 2013, Plaintiff entered into an "oral employment agreement" with Defendant, under which she worked as a store manager for Defendant's retail location at Stoneridge Mall in Pleasanton, California. Dkt. No. 20 ("First Amended Complaint" or "FAC") ¶ 5. Plaintiff was paid on an hourly basis and initially earned $19 per hour. *Id.*

In addition to Stoneridge, Plaintiff worked at several of Defendant's retail locations that are not named in the FAC. *See id.* ¶ 24. All of Defendant's locations, however, had operating hours of Monday through Saturday, from 10 a.m. to 9 p.m., and Sunday from 11 a.m. to 7 p.m. *Id.* Plaintiff was the only full-time employee at Stoneridge. *See id.* ¶ 25. Defendant required Plaintiff

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

to arrive at the store 30 minutes before the scheduled opening and remain for 90 minutes after the scheduled closing each day. *See id.* ¶ 24. Defendant also required "team leaders [to] fill any open shifts that cannot be covered by the members, and that team members be scheduled at times that were most critical for success." *Id.* ¶ 26. Another policy required that two team members close the store each day. *See id.* The latter policy resulted in Plaintiff's "often [being] alone at [the store] from 9:30 a.m. to at least 1:00 p.m. each day that she worked." *Id.* Defendant did not permit Plaintiff to close the store during its hours of operation. *Id.* ¶ 27.

Plaintiff alleges that she "generally worked fifty to sixty hours per week, but was not compensated for all overtime due in part to the method by which Defendant coded its training time separate from regular hours worked." *Id.* ¶ 13. Specifically, between October 18, 2015 and October 31, 2015, Plaintiff claims her wage statements indicated that she worked 46.75 regular hours, 42.75 training hours, and 17.25 overtime hours. *Id.* And, between February 21, 2016 and March 6, 2016, she claims those statements indicated she worked 40 regular hours, 51 training hours, and 6.65 overtime hours. *Id.*

On June 7, 2017, Plaintiff gave Defendant notice of her resignation. *Id.* ¶ 19. By then, her rate of pay had risen to $28.13 per hour. *See id.* ¶ 7. Plaintiff alleges that Defendant owed her wages for "unpaid overtime" upon her resignation, which Defendant did not pay "at any time within thirty three days of her resignation." *Id.* ¶ 20.

### B. Procedural Posture

Plaintiff filed the FAC on November 2, 2017. Dkt. No. 20.[2] She brings five causes of action: (1) failure to pay wages, FAC ¶¶ 10-17; (2) waiting time penalties, *id.* ¶¶ 18-21; (3) failure to provide rest periods, *id.* ¶¶ 22-29; (4) wage statement violations, *id.* at 7-8 (paragraphs 30-32)[3]; and (5) unfair business practices, *id.* ¶¶ 30-37. Plaintiff seeks compensatory damages, statutory

---

[2] Plaintiff initially brought this action in state court, and Defendant filed a notice of removal on August 25, 2017. *See* Dkt. No. 1. After Defendant filed a motion to dismiss that complaint, *see* Dkt. No. 5, Plaintiff filed the FAC without leave on November 2, 2017, *see* Dkt. No. 20. While Defendant originally moved to strike the FAC, *see* Dkt. No. 24, the parties ultimately resolved their dispute and agreed to move forward and treat the FAC as the operative pleading, *see* Dkt. No. 28.

[3] The paragraphs in the portion of the FAC dealing with Plaintiff's claim for wage statement violations are misnumbered. The Court has adjusted its citations to this section accordingly.

1 penalties, injunctive relief, disgorgement of profits, and attorney's fees and costs. *See id.* at 8-9

2 (prayer for relief).

3 On November 30, 2017, Defendant filed this motion to dismiss. Dkt. No. 33 ("Mot.").

4 Plaintiff filed her opposition on December 14, 2017, Dkt. No. 42 ("Opp."), and Defendant replied

5 on December 21, 2017, Dkt. No. 21 ("Reply").

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* A factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," *id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)), and without "presum[ing] the truthfulness of the plaintiff's allegations," *id.* (citing *White*, 227 F.3d at 1242).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, a "plaintiff may plead herself out of court" if she "plead[s] facts which establish that [she] cannot prevail on [her] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (citation and internal quotation marks omitted).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

## III. DISCUSSION

Defendant seeks dismissal of Plaintiff's cause of action for failure to pay wages under Rule 12(b)(1), and argues that the remainder of Plaintiff's claims should be dismissed under Rule 12(b)(6). The Court considers each argument in turn.

### A. Plaintiff's Cause of Action for Failure to Pay Wages Survives Defendant's Rule 12(b)(1) Motion Because the Facts Underlying Plaintiff's Standing Also Go to the Merits of Her Claim.

Defendant first brings a factual attack under Rule 12(b)(1) against Plaintiff's cause of action for failure to pay wages ("the wage claim"), contending that Plaintiff lacks standing to bring this claim, thus depriving the Court of subject matter jurisdiction. *See* Mot. at 4-8. Both parties proffer "evidence beyond the complaint," which is properly before the Court on a factual Rule 12(b)(1) motion. *See Safe Air for Everyone*, 373 F.3d at 1039.

#### 1. When factual disputes regarding subject matter jurisdiction are "intertwined" with the merits of a plaintiff's claim, federal courts may not resolve those disputes, and must instead apply a summary judgment-like standard.

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,'

4

and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).[4] Because a plaintiff's standing is a prerequisite to a federal court's exercising subject matter jurisdiction over her cause of action, a defendant may challenge standing via a Rule 12(b)(1) motion. *See, e.g.*, *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010) (affirming district court's grant of Rule 12(b)(1) motion asserting that plaintiff lacked standing).

Where a defendant "raises a factual attack" on a Rule 12(b)(1) motion, the plaintiff must show by a preponderance of the evidence "that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012)). Generally, "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* at 1121-22 (citations omitted). The exception to the latter rule, however, is "that a court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id.* at 1122 n.3 (citations omitted). The issues are intertwined when "the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *See Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983). In that scenario, rather than resolving the factual dispute, "the trial court should employ the standard applicable to a motion for summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits." *Id.* (citation omitted); *see also Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 735 (9th Cir. 1979) ("[W]here the jurisdictional issue and the substantive issues are so intermeshed that the question of jurisdiction is dependent on decision of the merits, a party is entitled to have the jurisdictional issue submitted to the jury, rather than having the court resolve factual issues.").

//

---

[4] "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61).

5

### 2. The jurisdictional facts underlying Plaintiff's standing are intertwined with the merits of her claim, and Defendant's Rule 12(b)(1) motion does not satisfy the applicable summary judgment-like standard.

The applicable standard thus depends on whether the facts underlying the Court's subject matter jurisdiction and the merits of Plaintiff's wage claim are intertwined. The Court finds that they are. As such, the Court is required to apply a summary judgment-like standard, which Defendant cannot meet at this stage of the litigation.

#### a. The parties proffer conflicting evidence regarding Plaintiff's hours worked.

The Court begins with a summary of the allegations and proffered evidence relevant to the question of whether Plaintiff has standing to bring her wage claim. Plaintiff alleges that she "performed overtime work for which she was not compensated." FAC ¶ 11. Specifically, she alleges that Defendant did not pay her for some of the hours she spent training other employees. *See id.* ¶¶ 12-13. She provides two specific examples: between October 18 and October 31, 2015, she alleges she worked 46.75 regular hours and 42.75 training hours (for a total of 89.5 hours); and between February 21 and March 6, 2016, she alleges she worked 40 regular hours and 51 training hours (for a total of 91 hours). *See id.* ¶ 13. Because these are two-week periods, and because each workweek is 40 hours, *see* Cal. Lab. Code § 510(a), Plaintiff effectively seeks compensation for the amount of time she worked beyond 80 hours during each period.

Defendant contends that Plaintiff lacks standing to pursue this claim "because she cannot claim overtime for 'training' hours that she did not actually work." *See* Mot. at 4. To that end, Defendant proffers a declaration and time sheets, which purportedly establish that (1) Plaintiff was "only authorized to bill time for training when [she was] actually training new hires, *see* Dkt. No. 33-1 (Declaration of Jean Rose Cross, or "Cross Decl.") ¶ 7; and (2) "she billed [Defendant] for a significant amount of 'training' time during which no other employee was" present at the store," *id.* ¶ 12. Defendant concludes that, as a result, Plaintiff "was not entitled to be paid for those hours," *see* Mot. at 5, and "came nowhere close to meeting the 40-hour per week minimum necessary to trigger overtime obligations for those hours," *see id.* at 6. Accordingly, Defendant argues that Plaintiff lacks standing to bring a claim for failure to pay wages.

In response, Plaintiff contends that Defendant's argument—the "crux" of which "is that the training hours submitted by [her] do not correspond with training hours of the employees in her store"—is "premised on incomplete facts." *See* Opp. at 2. Specifically, Plaintiff asserts that she "is not claiming that she trained employees within her own store, but rather employees assigned to other retail locations, as she was instructed to do by her supervisors." *See id.*; *see also* Dkt. No. 43 (Declaration of Mie Yang, or "Yang Decl.") ¶ 3 ("Trainings were done at either my store in Pleasanton, California or at the retail location to which the trainee was assigned."), *id.* (listing employees she trained and their store locations). Plaintiff further asserts that she "believe[s] that all of [her] training hours listed on [her] timecards are accurate," Yang Decl. ¶ 4, and that she would "often email [her] hours to [her] district manager," rather than use the official timekeeping software, *id.* ¶ 5. As such, Plaintiff's position is that Defendant "does not consider the possibility that she may have trained other employees at other locations." *See* Opp. at 3.

### b. The issue of standing amounts to an inquiry as to whether Plaintiff actually worked the hours for which she seeks compensation, which also goes to the merits of her claim.

The facts underlying the jurisdictional issue of Plaintiff's standing and the merits of her wage claim are plainly intertwined. To determine whether Plaintiff has standing, this Court would have to determine, *inter alia*, whether Plaintiff suffered an injury in fact, or "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *See Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). It is a common-sense proposition that Plaintiff would have a legally protected interest in being paid for the hours she worked, and that she would lack an injury in fact—and thus standing—if she sought redress for hours she did not work. But in this case, the determination of whether Plaintiff has an injury in fact is also "dependent on the resolution of factual issues going to the merits" of her wage claim—specifically, whether Plaintiff is entitled to relief under the California Labor Code, which provides a right of action to an employee "receiving less than the . . . legal overtime compensation applicable to the employee." *See* Cal. Lab. Code § 1194(a). In such an action, Plaintiff would have "the initial burden of proving the amount and extent of the work she performed 'as a matter of just and reasonable inference.'" *See Bargas v. Rite Aid Corp.*,

245 F. Supp. 3d 1191, 1209 (C.D. Cal. 2017) (quoting *Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 40-41 (2014)).

In other words, there is factual overlap between what Plaintiff would be required to show to establish both standing and an entitlement to relief on the merits. Accordingly, judicial resolution of the disputed facts underlying subject matter jurisdiction is inappropriate.

        **c.    The material jurisdictional facts are in dispute, precluding a finding that Defendant is entitled to prevail as a matter of law on the question of Plaintiff's standing.**

Because the jurisdictional facts go to the merits, Defendant should prevail on its Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and [it] is entitled to prevail as a matter of law." *See Augustine*, 704 F.2d at 1077. At this stage of the litigation, Defendant cannot clear this hurdle. For example, there is a dispute as to whether Plaintiff worked any overtime hours for which she was not compensated. *Compare* Cross Decl. ¶¶ 7-11 (evidence that Plaintiff was authorized to bill hours for training only when there are other employees in the store, and that other employees were in the store for only 4.5 hours of the total training time Plaintiff billed), *and* Dkt. No. 33-1 at 4-9 (establishing that Plaintiff billed 93.75 training hours for the relevant period) (ECF pagination), *with* Yang Decl. ¶¶ 4-5 (evidence that Defendant's records of Plaintiff's hours may not be entirely accurate because of "the way training hours were coded" and because the software used to enter hours had a "problem," and that Plaintiff provided records of her work hours via email, which is not in the record). Because resolution of this dispute could preclude Plaintiff from establishing standing, it is a matter for the trier of fact, at least at this stage. *See Leite*, 749 F.3d at 1122 n.3 (citations omitted).

Accordingly, Defendant's motion to dismiss Plaintiff's wage claim is denied.

    **B.    Plaintiff Fails to State a Claim for Rest Period Violations and Wage Statement Violations, Although Her Waiting Time Penalty Claim and Claim Under the Unfair Competition Law Survive.**

Defendant next argues that Plaintiff fails to state a claim as to her remaining causes of action under Rule 12(b)(6).

        **1.    Plaintiff sufficiently pleads a waiting time penalty claim.**

Plaintiff alleges that she is entitled to waiting time penalties under section 203 of the

8

California Labor Code. *See* FAC ¶¶ 18-21. Specifically, she alleges that she resigned from her position on June 7, 2017, and "was not compensated for unpaid overtime . . . within thirty three days of her resignation." *See id.* ¶¶ 19-20. Defendant contends that the FAC "lacks any supporting factual allegations," and is "conclusory." *See* Mot. at 8. The Court finds that Plaintiff has met her pleading burden as to this claim.

As relevant here, when an employee quits her job, "her wages shall become due and payable not later than 72 hours thereafter" unless she has provided 72 hours' notice of her intention to quit, in which case such wages are due immediately. Cal. Labor Code § 202(a). An employer who "willfully fails to pay . . . any wages of any employee who is discharged or who quits" is subject to penalties. *Id.* § 203(a). In explaining the willfulness requirement, California courts have held that an "employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due." *See Ming-Hsiang Kao v. Joy Holiday*, 12 Cal. App. 5th 947, 962-63 (2017) (quoting *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981)). Rather, "[w]illful merely means that the employer intentionally failed or refused to perform an act *which was required to be done*." *Id.* at 963 (citation, internal brackets, and quotation marks omitted) (original emphasis). At the pleading stage, however, "a plaintiff need not allege willfulness with specificity." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 903 (9th Cir. 2013) (citing Fed. R. Civ. P. 9(b)).

Here, after alleging that she provided notice of her resignation and resigned on June 7, 2017, *see* FAC ¶ 19, Plaintiff pleads that "Defendant's failure to pay wages . . . was willful in that Defendant knew of and refused to pay Plaintiff's wages, and continues to refuse payment," *id.* ¶ 21. At this stage of the litigation, that is sufficient for Plaintiff's claim to survive. *See Rivera*, 735 F.3d at 903. Accordingly, Defendant's motion to dismiss Plaintiff's waiting time penalty claim is denied.

### 2. Plaintiff fails to plead sufficient facts in support of her rest period claim.

Plaintiff's third cause of action is for failure to "provide[] lawful rest periods." *See* FAC ¶ 23. She alleges that various policies of Defendant made it impossible for her to take the breaks to

which she was entitled. *See id.* ¶¶ 24-28. Defendant characterizes her claim as "impermissibly vague and conclusory." *See* Mot. at 9. The Court agrees with Defendant.

In California, "wage and hour claims are . . . governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC [Industrial Welfare Commission]." *Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98, 106 (2017). Both sources of authority are relevant here. First, section 226.7(b) of the California Labor Code prohibits, in relevant part, employers from "requir[ing] an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard or order of the [IWC]." Employers who fail to provide a rest period are required "to pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday" during which a rest period was not provided. Cal. Lab. Code § 226.7(c). Second, the relevant wage order—here, Wage Order No. 7-2001, "which applies to the mercantile industry"[5]—generally requires employers to authorize rest periods of 10 minutes for every four hours worked. *See Vaquero*, 9 Cal. App. 5th at 106 (citing 8 Cal. Code Regs. § 11070(12)(A)). But, "a rest period need not be authorized for employees whose total daily work time is less than three and one-half" hours. *See id.*

Plaintiff's allegations in support of her rest period claim are either insufficient or wholly conclusory. She alleges that during the course of her employment, "there was only one full time employee," and that she "was not allotted enough employee hours to schedule multiple part time employees to work each day." FAC ¶ 25. She further alleges that, as a result of certain scheduling constraints imposed by Defendant, she "was often alone at [the store] from 9:30 a.m. to at least 1:00 p.m. each day that she worked with no one to relieve her for a break." *Id.* ¶ 26. Neither allegation, however, plausibly pleads facts showing that Defendant failed to provide a rest period during any four-hour span of work, in part because she fails to plead how long her shifts

---

[5] "'Mercantile Industry' means any industry, business, or establishment operated for the purpose of purchasing, selling, or distributing goods or commodities at wholesale or retail; or for the purpose of renting goods or commodities." 8 Cal. Code Regs. § 11070(2)(H).

10

were. *See Ovieda v. Sodexo Operations, LLC*, No. CV 12-1750-GHK (SSx), 2012 WL 1627237, at *2 (C.D. Cal. May 7, 2012) (dismissing claim under section 226.7 because the plaintiff "fail[ed] to allege that she even once worked a shift long enough to obligate [the defendant] to provide her with a rest period, let alone that she worked such shifts consistently"). Plaintiff also cites Defendant's policy of "not permitting Plaintiff to close the store during its hours of operation," *id.* ¶ 27, and asserts that she "often worked more than four hours without the opportunity to take a rest break free from all duty," *id.* ¶ 28. But such a conclusory allegation cannot survive a Rule 12(b)(6) motion. *See Raphael v. Tesoro Refining & Mktg. Co. LLC*, No. 2:15-cv-02862-ODW(Ex), 2015 WL 4127905, at *3 (C.D. Cal. July 8, 2015) (dismissing plaintiff's rest period claim under Rule 12(b)(6) where he provided "no relevant facts or dates during which [the] alleged violations occurred" and merely "claim[ed] that 'at all relevant times' [his former employer] failed to comply with a laundry list of regulations").

Accordingly, Defendant's motion to dismiss Plaintiff's rest period claim is granted with leave to amend, since Plaintiff could conceivably plead additional facts to state a claim. *See Lopez*, 203 F.3d at 1130.

### 3. Plaintiff fails to state a claim for wage statement violations.

Plaintiff next alleges that Defendant provided her with "deficient" wage statements, "in that they did not accurately reflect all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by Plaintiff." FAC at 8 (paragraph 32). Specifically, Plaintiff alleges her "training hours were coded as regular time hours," even though they should have been coded as overtime. *See id.* Defendant argues only that Plaintiff's "inaccurate wage statement [claim] is 'entirely dependent' on the success of her overtime claim," which Defendant contends should fail. *See* Mot. at 11.

Under section 226(a) of the California Labor Code, employers are required to provide employees "with accurate itemized statements in writing showing, among other things, their gross and net wages earned, total hours worked . . . and 'all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.'" *See Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1134 (N.D. Cal. 2016) (quoting Cal.

Lab. Code § 226(a)). Section 226(e) of the Labor Code permits employees "suffering injury as a result of a knowing and intentional failure by an employer" to comply with section 226(a) to recover damages. California courts have been clear that this injury requirement "cannot be satisfied simply because one of the nine itemized requirements in [section 226(a)] is missing from a wage statement." *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011) (citing *Jaimez v. DAIOHS USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010)). Rather, an employee seeking to recover for wage statement violations must "demonstrate[] *an injury* arising from the missing information." *Id.* at 1143 (citation omitted) (original emphasis); *see also Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008) (same). In short, "the deprivation of that information, standing alone[,] is not a cognizable injury." *Id.* (citation and internal quotation marks omitted).

Here, Plaintiff has not attempted to allege a cognizable injury. Accordingly, Defendant's motion to dismiss Plaintiff's claim for wage statement violations is granted with leave to amend.

### 4. Plaintiff pleads sufficient facts to state a claim under the Unfair Competition Law only insofar as it is predicated on her wage claim.

Last, Plaintiff brings a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("the UCL"), FAC ¶ 30, which she predicates on her wage and rest period claims, *see* FAC ¶¶ 32-34. Defendant, in turn, argues that Plaintiff's UCL claim fails because it is derivative of two deficient claims. *See* Mot. at 10-11.

Plaintiff makes clear that her UCL claim is one for "unfair business practices." FAC ¶ 31. The UCL prohibits, *inter alia*, "any unlawful, unfair, or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200, and permits plaintiffs to bring claims for unpaid wages, *see Sims v. AT&T Mobility Servs. LLC*, 955 F. Supp. 2d 1110, 1120 (E.D. Cal. 2013) (citing *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2000)). There is a split of authority as to which of three different tests should be applied to determine whether a business practice is unfair. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1170 (describing split in authority); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256-57 (2010) (same). In *Drum*, the court summarized the three tests as follows:

> The test applied in one line of cases . . . requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." . . . The test applied in a second line of cases is whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." . . . The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act . . . and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."

182 Cal. App. at 256-57 (citations omitted). "[L]iability under the UCL is generally derivative of liability under another statutory violation," so to the extent a UCL claim is "predicated on any claim disposed of by" a court, it is invalid. *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 961 (N.D. Cal. 2016) (citing *Rubin v. Wal-Mart Stores, Inc.*, 599 F. Supp. 2d 1176, 1179 (N.D. Cal. 2009)).

As a preliminary matter, Defendant is correct that Plaintiff fails to state a claim under the UCL to the extent it is derivative of her failed rest period claim under section 226.7. *See id.* That claim is therefore dismissed without prejudice. As for her UCL cause of action deriving from her wage claim, Plaintiff alleges that she "generally worked fifty to sixty hours per week, but was not compensated for all overtime." FAC ¶ 13. She also alleges two specific two-week periods where she claims to have worked more than 80 hours but was not paid overtime: one in October 2015, during which she worked 89.5 total non-overtime hours, and one in February 2016, during which she worked 91 non-overtime hours. *See id.*

Federal courts considering claims under the California Labor Code apply the standard set forth in *Landers v. Quality Communications, Inc.*, 773 F.3d 638 (2014), which involved claims under the Federal Labor Standards Act ("FLSA"). *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016). There, the Ninth Circuit held that, "at a minimum, a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week." *Landers*, 773 F.3d at 645 (citations omitted). Plaintiff has done so here. She therefore

13

states a claim for failure to pay overtime wages under section 1194 of the California Labor Code. The Court is also satisfied that at this stage she has sufficiently pled a claim for unfair business practices under the UCL, given that her claim is both "tethered to" section 1194 of the Labor Code and that the failure to pay wages rightfully owed to an employee is "unethical." *See Drum*, 182 Cal. App. 4th at 256-57.

Accordingly, Defendant's motion is denied as to the UCL claim predicated on the wage claim, but granted insofar as it is predicated on the rest period claim.

### C. Plaintiff Is Barred from Seeking Injunctive Relief.

Last, Defendant contends that the FAC "pleads for relief that is barred as a matter of law." Mot. at 12. Specifically, Defendant cites Plaintiff's request "[f]or injunctive relief against the underpayment of employees." *See id.*; *see also* FAC at 9 (prayer for relief).[6] Plaintiff does not respond to these arguments in her opposition. The Court agrees with Defendant. Plaintiff is a former employee of Defendant's, *see* FAC ¶ 19 ("Plaintiff's employment ended on June 17, 2017"), and it is well-settled that former employees lack standing to seek injunctive relief to ensure their former employer's compliance with section 226, *see Price*, 192 Cal. App. 4th at 1142 n.5; *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1036-37 (9th Cir. 2006) (finding that plaintiff seeking injunctive relief in suit under the Americans with Disabilities Act against former employer "would not stand to benefit from an injunction," and thus lacked standing). Accordingly, Plaintiff's claim for injunctive relief against future underpayment is dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion as follows:

1. Plaintiff's rest period claim under section 226.7 of the California Labor Code is **DISMISSED WITH LEAVE TO AMEND**, and the derivative UCL claim and

---

[6] Defendant also argues that Plaintiff's claim for "[f]or disgorgement of profits as to" her rest period claim "has no basis in California law." *See* Mot. at 13. Because Plaintiff failed to state a claim for rest period violations, however, the Court need not address her related claim for disgorgement of profits and dismisses that claim without prejudice.

14

claim for disgorgement of profits are **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiff's claim that Defendant failed to provide accurate wage statements under section 226 of the California Labor Code is **DISMISSED WITH LEAVE TO AMEND**.

3. Plaintiff's claim for injunctive relief against the underpayment of employees is **DISMISSED WITH PREJUDICE**.

4. Defendant's motion is **DENIED** as to Plaintiff's wage claim under section 1194 of the California Labor Code and the derivative UCL claim, and as to her waiting time penalty claim under section 203 of the California Labor Code.

Should Plaintiff choose to amend the FAC, she is directed to do so in accordance with the discussion above no later than 28 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: 2/20/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge